UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

BETH ISRAEL MEDICAL CENTER,
CONTINUUM HEALTH PARTNERS, INC., and
ST. LUKE'S-ROOSEVELT HOSPITAL CENTER,

No. 12-cv-1028 (RJS) (Rel. 11-cv-4509)

          Plaintiffs,

        v.

SIEMENS INFORMATION AND
COMMUNICATION NETWORKS, INC.,
SIEMENS COMMUNICATIONS, INC., and
SIEMENS ENTERPRISE COMMUNICATIONS,
INC.,

          Defendants.

------------------------------------------------------------------- x

### SIEMENS ENTERPRISE COMMUNICATIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Dennis H. Tracey, III
Anna Kadyshevich
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND.......................................................................................3

I.       THE OVERCHARGES ...................................................................................3

         A.       Long Distance Services........................................................................4

         B.       Temporary Transparent LAN ..............................................................4

         C.       IDSR Service .......................................................................................5

         D.       T-1 Networks .......................................................................................5

         E.       Additional Overcharges ......................................................................6

         F.       CCS Fees ..............................................................................................6

II.      THE AGREEMENTS ......................................................................................6

ARGUMENT...............................................................................................................9

I.       LEGAL STANDARD ON RULE 12(B)(6) MOTION TO DISMISS ...........9

II.      CONTINUUM HEALTH PARTNERS, INC. SHOULD BE DISMISSED
         BECAUSE IT IS NOT A PROPER PARTY..................................................10

         A.       Continuum is not a proper party plaintiff .........................................10

III.     THE PLAINTIFFS' CONTRACT CLAIM IS FATALLY FLAWED ..........11

         A.       The Plaintiffs Have Failed to Plead Their Own Performance ...........11

         B.       By its Clear Terms, The 2005 Project Order Does not Cover
                  "Disconnects" ....................................................................................14

IV.      THE HOSPITAL'S BREACH OF FIDUCIARY DUTY CLAIMS
         SHOULD BE DISMISSED ...........................................................................16

         A.       The Fiduciary Duties Do Not Apply to Invoice Management...........16

         B.       Plaintiffs Have Failed to Allege A Breach of the Actual Duties
                  Owed ..................................................................................................17

\\NY - 037460/000021 - 2389500 v7

C.      Any Fiduciary Duties Owed Were Superseded by the 2006 Project
        Order ........................................................................................................19

D.      The Breach of Fiduciary Duty Claim is Time-Barred ........................................21

CONCLUSION..........................................................................................................23

\\NY - 037460/000021 - 2389500 v7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital, LLC*,
No. 00 Civ. 5773 (GEL), 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001) ...................................3

*A. Servidone, Inc. v. Bridge Technolocies LLC et al.*,
280 A.D.2d 827, 721 N.Y.S.2d 406 (3d Dep't 2001) ............................................................10

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .......................................................................................................9, 10

*Baraliu v. Vinya Capital L.P.*,
No. 07 Civ. 4626 (MHD), 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ...............................13

*Barnum v. Millbrook Care Ltd. P'ship.*,
850 F.Supp. 1227 (S.D.N.Y. 1994), *aff'd*, -- F. App'x --, 43 F.3d 1458 (2d Cir. 1994) .........20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................................10

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) .....................................................................................................7

*Calvin Klein Trademark Trust v. Wachner*,
129 F.Supp.2d 248 (S.D.N.Y. 2001) .................................................................................16, 18

*Comfort Inn Oceanside v. Hertz Corp.*,
No.11-cv-1534 (JG) (JMA) 2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011)........................12, 13

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991).......................................................................................................7

*Creditsights, Inc. v. Ciasullo*,
No. 05 cv 9345 (DAB), 2007 WL 943352 (S.D.N.Y. Mar. 29, 2007) ...................................20

*Dignelli v. Berman et al.*,
293 A.D.2d 565, 741 N.Y.S.2d 66 (3d Dep't 2002) ..............................................................21

*Drain v. Paragon Capital Mgmt. Corp.*,
16 Misc.3d 1115(A), 2007 WL 2161904 (Sup. Ct. Suffolk Cnty. July 3, 2007)....................21

*First Investors Corp. v. Liberty Mut. Ins. Co.*,
152 F.3d 162 (2d Cir. 1998)....................................................................................................12

*First Serv. Fin., Inc., v. City Lights At Queens Landing, Inc.*,
No. 08 Civ. 3312, 2009 WL 750190 (S.D.N.Y. Mar. 20, 2009) .......................................14, 15

*Fischer & Mandell, LLP v. Citibank*, N.A., 632 F.3d 793 (2d Cir. 2011)....................................11

*Helprin v. Harcourt, Inc.*,
    277 F. Supp. 2d 327 (S.D.N.Y. 2003)........................................................................3

*IDT Corp. v. Morgan Stanley Dean Witter & Co. et al.*,
    12 N.Y.3d 132, 879 N.Y.S.2d 355 (2009) ..............................................................21

*Leonard v. Gateway II, LLC*,
    68 A.D.3d 408, 890 N.Y.S.2d 33 (1st Dep't 2009)................................................10

*Maniolos v. U.S.*,
    741 F. Supp. 2d 555 (S.D.N.Y. 2010).....................................................................14

*Marchig v. Christie's, Inc.*,
    430 F.App'x. 22, 2011 WL 2685608 (2d Cir. July 12, 2011) .................................22

*Northeast Gen. Corp. v. Wellington Adver., Inc.*,
    82 N.Y.2d 158, 604 N.Y.S.2d 1 (1993) .................................................................16

*Patel v. Baluchi's Indian Rest.*,
    No. 08 Civ. 9985, 2009 WL 2358620 (S.D.N.Y. July 30, 2009) ...........................13

*Pilchman v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*,
    No. 10 cv 4976 (KMW), 2011 WL 4526455 (S.D.N.Y. Sept. 29, 2004) ...............10

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000).......................................................................................3

*Soley v. Wasserman*,
    No. 08 Civ. 9262 (KMW)(FM), 2011 WL 4526145 (S.D.N.Y. Sept. 29, 2011)....17

*Stuto v. Fleishman*,
    164 F.3d 820 (2d Cir. 1999).....................................................................................3

*Teachers Ins. and Annuity Assoc. of Am. v. Cimi Mae Servs. Ltd. P'ship*,
    No. 06 Civ. 0392 (LAK), 2007 WL 7569162 (S.D.N.Y Sept. 7, 2007) ...........16, 18

*Transp. Workers Union of Am. Local 100 AFL-CIO et al. v. Schwartz*,
    32 A.D.3d 710, 821 N.Y.S.2d 53 (1st Dep't 2006) ...............................................21

*Udell v. Berkshire Life Ins. Co. of Am.*,
    No. 03 Civ. 2721(SJF), 2005 WL 1243497 (E.D.N.Y. May 25, 2005)...................14

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
    1 N.Y.3d 470, 775 N.Y.S.2d 765 (2004) ...............................................................17

*W.W.W. Assoc. v. Giancontieri*,
    77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) .............................................................17

\\NY - 037460/000021 - 2389500 v7

*William Kaufman Org., Ltd. v. Graham & James LLP,*
    269 A.D.2d 171, 703 N.Y.S.2d 439 (1st Dep't 2000)..........................................................19

*Yak v. Bank Brussels Lambert, BBL,*
    252 F.3d 127 (2d Cir. 2001)...........................................................................................7, 20

## STATUTES

Fed. R. Civ. P. 9(c) ......................................................................................................................13

Fed. R. Civ. P. 12(b)(6)..........................................................................................................9, 14, 23

\\NY - 037460/000021 - 2389500 v7

This memorandum of law is respectfully submitted by defendant Siemens Enterprise Communications, Inc. ("SEN") (also sued herein incorrectly as "Siemens Information and Communication Networks, Inc." and "Siemens Communications, Inc.")[1] in support of its motion to dismiss the complaint filed by plaintiffs Beth Israel Medical Center, St. Luke's-Roosevelt Hospital Center and Continuum Health Partners, Inc. (the "Plaintiffs") on February 9, 2012 (the "Complaint" or "Compl.").[2]

## PRELIMINARY STATEMENT

In this case, the Plaintiffs claim that they were overcharged for telecommunication service by Verizon. After initially suing only Verizon, Plaintiffs have now expanded their claims to include improper parties, and claims that are not only legally defective, but barred by the language of the very contracts on which the claims are based. The claims should be dismissed.

The Plaintiffs contracted with Verizon for a variety of voice and data services, beginning at least as early as 1998. According to Plaintiffs, Verizon is the party that allegedly imposed the overcharges, failed to disconnect redundant services, and charged for services that the Plaintiffs never wanted or asked for in the first place. In the present claims, Plaintiffs seek to recover the same damages from SEN.

The alleged basis for the claims is an agreement entered into in 2004 between Plaintiffs Beth Israel Medical Center and St. Luke's-Roosevelt Hospital Center (together, the "Hospitals")[3]

---

[1] The entities "Siemens Information and Communication Networks, Inc." and "Siemens Communications, Inc." do not exist and have not been served in this action.

[2] For the convenience of the Court, a copy of the Complaint is attached to the Declaration of Dennis H. Tracey, III, dated April 27, 2012 (the "Tracey Decl.").

[3] "Hospitals" is defined in the Plaintiffs' Complaint and the Plaintiffs' Amended Complaint against Verizon (the "Verizon Complaint" or "Verizon Compl.") to include Continuum Health Partners, Inc. *See* Compl. Introduction; Verizon Compl. ¶ 2. However, as SEN argues in Part II, *infra*, Continuum Health Partners, Inc. is not a party to the IP-PBX Agreement or any project orders incorporated therein. The capitalized term Hospitals as used in this Motion to Dismiss

- 1 -

and SEN (collectively, the "Parties") concerning certain telecommunication management services (the "IP-PBX Agreement").[4]  In 2005, the IP-PBX Agreement was supplemented by an order for additional services that the Hospitals requested from SEN (the "2005 Project Order"). Under the 2005 Project Order, the Hospitals ordered a broad range of services, including invoice processing.  Invoice processing involved receiving, reviewing, and verifying certain telecommunications invoices.  SEN's invoice processing service was contingent, however, on its receipt of the relevant and necessary information from the Hospitals.

Based on the terms of the 2005 Project Order, Plaintiffs seek to collect damages from SEN for Verizon overcharges.  However, Plaintiffs' claims suffer from a number of fundamental defects.  First, Plaintiffs fail to plead their own performance under the 2005 Project Order – a fatal flaw to their breach of contract claim.  Moreover,  Plaintiffs seek damages for services that should have been disconnected when the 2005 Project Order makes clear that SEN was not responsible for disconnects or liabilities associated with disconnects.  And, Plaintiffs fail to adequately plead that SEN breached the actual fiduciary duties owed under the 2005 Project Order; rather, in making their breach of fiduciary argument, Plaintiffs merely duplicate their breach of contract claim.

Lastly, the Parties entered into another project order (the "2006 Project Order") for invoice management services.  This order specifically superseded the 2005 Project Order with respect to invoice processing services and terminated any fiduciary duties owed to the Hospitals. Plaintiffs' claims are defective as a matter of law and should be dismissed.

---

(unless quoted from the Complaint or the Verizon Complaint) refers solely to Beth Israel Medical Center and St. Luke's-Roosevelt Hospital Center.
[4] Long Island College Hospital is also a party to the IP-PBX Agreement.

\\NY - 037460/000021 - 2389500 v7

## FACTUAL BACKGROUND

I.     **The Overcharges**

The Complaint alleges that Verizon charged the Plaintiffs millions of dollars for services that Verizon should have never billed.  Compl. ¶¶ 17-18.  Acknowledging that Verizon was responsible for these alleged overcharges, Plaintiffs first sought to negotiate with Verizon to repay the money – an effort that was partially successful.  Compl. ¶ 19.  To recover the remainder of the overcharges, Plaintiffs filed suit against Verizon in the Southern District of New York (the "Verizon Action").  Compl. ¶ 19.[5]  Four of the six categories of damages that Plaintiffs now seek to recover from SEN are the exact same categories of damages that Plaintiffs seek in the Verizon Action, (Compl. ¶ 19) even though Plaintiffs state that Verizon was responsible for, and has admitted responsibility for, many of the overcharges and overpayments.  Verizon Compl. ¶ 1.  The categories of overcharges and fees that the Plaintiffs allege that SEN is responsible for are as follows:

---

[5] A copy of the relevant portions of the Verizon Complaint is attached as Exhibit 2 to the Tracey Decl.  On a motion to dismiss, the Court may consider documents that are incorporated by reference into the Complaint.  *See Stuto v. Fleishman*, 164 F.3d 820, 826 n. 1 (2d Cir. 1999) (citations omitted) (considering a document that was "discussed in the complaint and therefore was incorporated by reference"); *2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital, LLC*, No. 00 Civ. 5773 (GEL), 2001 WL 410074, at *5 (S.D.N.Y. Apr. 23, 2001) (considering documents that were not attached to the complaint on a motion to dismiss because "the Complaint explicitly references them").  To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents."  *Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 331 (S.D.N.Y.  2003).  In the Complaint, Plaintiffs admit that they are seeking to recover overcharges for four of the *same* categories of overbilled services in both actions and cite the Verizon Action by name and docket number.  *See* Compl. ¶ 19.  This is a clear, definite and substantial reference to the Verizon Complaint.  The Court may also consider the Verizon Complaint as a public record of which judicial notice may be taken.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint filed by the defendant in a separate lawsuit).

A.     **Long Distance Services**

The Plaintiffs allege that during the period between April 2008 to June 2009, Verizon billed the Plaintiffs for long-distance services at higher-than contracted rates on five of the Plaintiffs' long-distance accounts.  Compl. ¶ 21.  According to the Plaintiffs, Verizon admitted that it overbilled the Plaintiffs and agreed to repay part of the overpayment—approximately $500,000. Verizon Compl. ¶¶ 15-18.  Plaintiffs allege that Verizon continues to owe the Plaintiffs for the remainder of the overcharges.  *Id.* at ¶ 18.  Nevertheless, Plaintiffs also allege that SEN was responsible for not discovering the alleged overbilling.  Compl. ¶¶ 23-24.

B.     **Temporary Transparent LAN**

Plaintiffs contracted with Verizon for a temporary Transparent Local Area Network ("Transparent LAN") circuit to be used until another service, the Intellilight Optical Transport Service (the "IOT Service") together with the Dense Wavelength Division Multiplexing (the "DWDM") technology, became available.  Compl. ¶¶ 25-26.  According to Plaintiffs, while "Verizon was supposed to terminate the Transparent LAN circuits when they were no longer needed," it failed to do so.  Compl. ¶ 27.  Instead, from December 2005 to May 2009, Verizon continued to bill for the unnecessary Transparent LAN together with the IOT and DWDM services at the same time.  Compl. at ¶ 27.  Plaintiffs allege that "[a]s a result of Verizon's failure to stop billing the Hospitals for the Transparent LAN circuits," they were incorrectly billed approximately $870, 000.  Verizon Compl. ¶ 27; Compl. ¶ 29.  Plaintiffs state that Verizon has admitted that it double-billed the Plaintiffs, and that Verizon defends itself by arguing that "the Hospitals were obligated to submit a disconnect request for the Transparent LAN circuits." Verizon Compl. ¶ 29.  The Plaintiffs respond that Verizon had failed to disclose that a disconnect request was required, and that they "did not know, and had no way of knowing, that Verizon

- 4 -

required the Hospitals to submit a disconnect request." Verizon Compl. ¶¶ 29-30. Despite the

fact that the Plaintiffs did not know of the disconnect requirement, and claim it was Verizon's

responsibility, they nevertheless allege, inconsistently, that SEN should have terminated the

service. Compl. ¶ 30.

### C.     IDSR Service

Even before they contracted for the IOT Services, the Plaintiffs order an Intellilight

Dedicated Sonet Ring ("IDSR") from Verizon. Compl. ¶ 33. Like the Temporary LAN, Verizon

was responsible to disconnect this service once the IOT Service had commenced. Compl. ¶ 32.

Again, Verizon failed to terminate billing for this service and the Plaintiffs were double-billed

from December 2005 through October 2008. Compl. ¶ 33. Verizon repaid some of these

overcharges, and, according to Plaintiffs, has refused to pay the remainder because Plaintiffs'

claims are barred by a statute of limitations. Verizon Compl. ¶ 36. Now Plaintiffs seek to

recover from SEN the outstanding overcharges, alleging that SEN failed in its duty to detect that

"Verizon was charging the Hospitals for services that were not supposed to be billed once the

billing for IOT Service began." Compl. ¶ 34.

### D.     T-1 Networks

Verizon charged Plaintiffs for voice services on data lines that they "never requested,

wanted or used." Compl. ¶ 37. Beginning in 1998 (years before the contractual relationship

with SEN began) and ending in 2009, Plaintiffs paid approximately $166,000 for the unwanted

voice service. Compl. ¶ 38; Verizon Compl. ¶ 40. While Verizon maintains that Plaintiffs had

to file an exemption certificate in advance of the billing to avoid the charges, Plaintiffs claim that

they "were never informed, and did not know, that they had to file an exemption certificate in

advance" to avoid the surcharge. Verizon Compl. ¶ 41. Plaintiffs now allege that through

- 5 -

processing the Verizon invoices, SEN should have detected the unwanted voice service charges. Compl. ¶ 39.

**E.      Additional Overcharges**

In the final category, Plaintiffs seek the interest on several different categories of overcharges that Verizon has already paid the principal balance on.  Compl. ¶ 42. These overcharges are: (a) discounts under a Corporate Rewards program; (b) higher-than contracted rates for Virtual Optical Network Services; (c) Frame Relay services that were not billed according to a discounted rate; and (d) overcharges and overpayments for lines that were not working.  Compl. ¶ 41.

**F.      CCS Fees**

Plaintiffs entered into a contract with Communications Consulting Services ("CCS") for the provision of certain services, including the review of Verizon invoices.  Compl. ¶ 18.  In reviewing invoices, CCS apparently discovered the alleged overcharges.  Compl. ¶ 18.  Plaintiffs claim that SEN is responsible for the fees paid to CCS as a result of SEN's alleged "non-performance."  Compl. ¶ 45.

**II.      The Agreements**

Plaintiffs' claims against SEN for the overcharges and fees described above arise out of a contractual relationship between the parties.  Specifically, the Parties entered into a master written agreement, the "IP-PBX Communications Network Acquisition, Support and Implementation Agreement" (the IP-PBX Agreement) dated September 30, 2004.  Compl. ¶ 9.[6] The IP-PBX Agreement concerned "certain services related to the Hospitals' communications network."  Compl. ¶ 9.  Under Article IV of the IP-PBX Agreement, the Parties agreed that they

---

[6] A copy of the relevant portions of the IP-PBX Agreement is attached as Exhibit 3 to the Tracey Decl.

\\NY - 037460/000021 - 2389500 v7

could enter into subsequent "Orders" which were incorporated by reference into the IP-PBX

Agreement and governed by its terms.  IP-PBX Agreement ¶ 11.20.  Pursuant to those terms, in

August 2005, the Parties entered into the 2005 Project Order for the provision certain

telecommunications management services.  Compl. ¶ 10-11.[7]  Exhibit A to the 2005 Project

Order detailed the scope of "On-Site" services that would be provided under the order.  Compl. ¶

12.  Those services were: Vendor Coordination; Switchboard Supervisor Management; Invoice

Processing; Mac and Service Fault Management; and other "Special Projects."  *See* 2005 Project

Order Exhibit A ¶¶ 1-5.  The "Process Invoice" section of Exhibit A provides, in part, that:

- [SEN] … will receive invoices directly from telecommunications service providers … The invoices may be submitted in a paper and/or digital format.
- For most known and recurring service invoices, [SEN] will verify charges and stamp (or hand-write) Departmental Charge Codes and submit the invoices to the relevant [Hospitals'] Accounts Payable Department for approval and payment.
- For unknown and new invoices, [SEN] will try its best to verify the accuracy of such invoices.

2005 Project Order Exhibit A ¶ 3.  Further, Exhibit A provided that invoice processing would be

done in accordance with the following services levels:

- [SEN] shall: (1) receive all invoices, review and correct any errors in the invoices in a timely manner, and prepare vouchers for payment of invoices in accordance with the [Hospitals'] payment policy then in effect; and (2) submit invoices, together with the appropriate vouchers, to [Hospitals] for payment within a reasonable period of time prior to the due date…
- [SEN] shall process all invoices within fifteen (15) business days of receipt except in the case of billing discrepancies.

---

[7] A copy of the relevant portions of the 2005 Project Order is attached as Exhibit 4 to the Tracey Decl.  A copy of Exhibit A to the 2005 Project Order ("2005 Project Order Exhibit A") is attached as Exhibit 5 to the Tracey Decl.  Plaintiffs bring their claims pursuant to the terms of the Parties' IP-PBX Agreement and 2005 Project Order, though neither is appended to the Complaint.  Nevertheless, the Court may consider the documents on a motion to dismiss as Plaintiffs relied upon their terms and effects in drafting the Complaint, thus incorporating them by reference and making them integral to the pleading.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005); *see also Yak v. Bank Brussels Lambert, BBL*, 252 F.3d 127, 129 (2d Cir. 2001) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

\\NY - 037460/000021 - 2389500 v7

*Id.*  The "Out of Scope Activities" for Invoice Processing are:

- Processing any invoices that are outside of telecommunications
- [SEN] *will not be liable for disconnects, late fees, and liabilities associated with disconnects.*
- Process improvement and automation activities.

*Id.* (emphasis added).  Plaintiffs allege that SEN "had fiduciary duties to the Hospitals with respect to [SEN's] bill review function, and that [SEN] was obligated to reimburse the Hospitals for all expenses incurred as a result of nonperformance."  Compl. ¶ 16.  To make this allegation, Plaintiffs quote the service levels associated with the "Vendor Coordination" section of Exhibit A.  *See* Compl. ¶ 16.  Of the various "service levels" associated with Vendor Coordination, only two limited fiduciary duties were created:

- [SEN] shall have a fiduciary duty to use its best efforts to reduce the [Hospitals'] financial responsibility with respect to the Vendor Agreements and to provide [the Hospitals] with timely notice of any renewal, termination, or cancellation dates, any upcoming changes in fees in respect of the Vendor Agreements, and any opportunities to reduce the [Hospitals'] costs with respect to the Vendor Agreements; *provided that, [SEN] can make no guarantee that it may actually reduce the [Hospitals'] financial responsibility with respect to the Vendor Agreements.*

- [SEN] shall also have a fiduciary duty to promptly inform [Continuum's CTO] of any breach of, or misuse or fraud in connection with, any Vendor Agreement *of which it becomes aware* and to cooperate with [the Hospitals] to prevent or mitigate the effects of any such breach, misuse, or fraud.

2005 Project Order Exhibit A ¶ 1 (emphasis added).  Notably, Exhibit A states that "Vendor Coordination services will be provided to NEC, Cortel, and Shared Technologies on the NEC, Mitel, and Nortel telephone equipment being used by [the Hospitals]."  *Id.*  Verizon is not included in that list.  Generally, Vendor Coordination services pertained to MAC, break/fix services and related services with the third-party vendors.  *See* 2005 Project Order Exhibit A Preamble, ¶ 1.  Plaintiffs allege SEN breached these contractual and fiduciary duties, resulting in the overcharges described above.  *See* Compl. *generally*.

- 8 -

A year after ordering services under the 2005 Project Order, the Hospitals entered into the 2006 Project Order with SEN.[8]  According to the terms of the 2006 Project Order, it was "incorporated *as part of the* IP-PBX Agreement."  2006 Project Order Cover Page.  The services provided under the 2006 Project Order, as described in Exhibit 1, "Statement of Work," of the 2006 Project Order, (the "2006 Project Order Statement of Work"), were "billing management" services for the Hospitals telecommunications invoices, including Verizon.  2006 Project Order Statement of Work ¶ 1.  Article 9.2 of the 2006 Project Order contained a merger clause that states:

- This Order, together with the IP-PBX Agreement, sets forth *the entire agreement and understanding between the Parties as to the subject matter hereof* and merges all prior discussion between the Parties relating to that subject matter. *None of the Parties will be bound by any conditions, definitions, warranties, understandings or representations with respect to such subject matter other than as expressly provided herein* or as duly set forth on or subsequent to the Effective Date of this Order in writing and signed by an authorized representative of the Party to be bound hereby.

2006 Project Order ¶ 9.2 (emphasis added).  The 2006 Project Order also provided that, as applicable to the billing management services, "the terms and conditions of this Order will have precedence over the IP-PBX Agreement in the event of a conflict."  2006 Project Order Preamble.

## **ARGUMENT**

## I.      **LEGAL STANDARD ON RULE 12(B)(6) MOTION TO DISMISS**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

---

[8] A copy of the relevant portions of the 2006 Project Order is attached as Exhibit 6 to the Tracey Decl. and a copy of the 2006 Project Order Statement of Work is attached as Exhibit 7 to the Tracey Decl.  As discussed in more detail in Part IV, *infra*, the Court may consider the 2006 Project Order on this motion to dismiss because it is incorporated by reference and integral to the Complaint.

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 570.  But the court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S. Ct. at 1949-50.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  If there are insufficient factual allegations to raise a right to relief above the speculative level, the complaint must be dismissed.  *Twombly*, 550 U.S. at 555. Under this standard, both of Plaintiffs' causes of action fail to state a claim.

## II.   CONTINUUM HEALTH PARTNERS, INC. SHOULD BE DISMISSED BECAUSE IT IS NOT A PROPER PARTY

### A.   Continuum is not a Proper Party Plaintiff

Continuum Health Partners, Inc. ("Continuum") is not a contracting party to the IP-PBX Agreement and subsequent Project Orders.  As such, Continuum lacks standing to bring any claim against SEN.  It is well established that "a plaintiff may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity."  *Pilchman v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, No. 10 cv 4976 (KMW), 2011 WL 4526455, at *13 (S.D.N.Y. Sept. 29, 2004) (quotation omitted).  Accordingly, courts have properly dismissed breach of contract claims where the plaintiff was not in privity with the defendant.  *See Leonard v. Gateway II, LLC*, 68 A.D.3d 408, 408 409, 890 N.Y.S.2d 33, 35 (1st Dep't 2009) (affirming a dismissal of breach of contract claims where plaintiff had no privity with defendants); *A. Servidone, Inc. v. Bridge Technolocies LLC et al.*, 280 A.D.2d 827, 829, 721 N.Y.S.2d 406, 408 (3d Dep't 2001) (finding no cause of action for breach of contract where the contracting party was a *legally distinct corporate entity* from the plaintiff).

The Hospitals are distinct New York not-for-profit institutions, each with their own headquarters and mailing addresses, separate from Continuum – their parent. Compl. ¶ 3. The IP-PBX Agreement has a specific provision regarding "[Continuum's] Status," and states that "[SEN] acknowledges and agrees that [Continuum] is not a party to this Agreement … " IP-PBX ¶ 7.3. Similarly, the 2005 Project Order makes clear that it is entered into between SEN and the Hospitals individually. *See* 2005 Project Order Cover Page, Preamble. Nor is Continuum a signatory to the IP-PBX Agreement or the 2005 or 2006 Project Orders; rather, all of the agreements are signed by the Hospitals individually. *See* IP-PBX Agreement Signature Page; 2005 Project Order Signature Page; 2006 Project Order Signature Page. These are just several examples that demonstrate that the contractual relationship established was one between SEN and the individual Hospitals, not Continuum. As such, the Court must dismiss Continuum as a party to this lawsuit.

## III.   THE PLAINTIFFS' CONTRACT CLAIM IS FATALLY FLAWED

Now turning to the merits of Plaintiffs' Complaint, the breach of contract claim fails for two reasons. First, Plaintiffs have failed to allege their own performance under the 2005 Project Order. This deficiency is fatal to Plaintiffs' claim. Second, many of the overcharges did not fall under SEN's responsibilities under the 2005 Project Order, and were, in fact, specifically disclaimed. This warrants dismissal of much of the overcharges that form the basis of the contract claim.

### A.   The Plaintiffs Have Failed to Plead Their Own Performance

In order to properly state a claim for breach of contract under New York law, a plaintiff must establish: "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank*, N.A., 632 F.3d 793, 799 (2d

\\NY - 037460/000021 - 2389500 v7

Cir. 2011) (quoting *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)).  A failure "to plead the performance of its own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded." *Comfort Inn Oceanside v. Hertz Corp.*, No.11-cv-1534, (JG) (JMA) 2011 WL 5238658, at *3 (E.D.N.Y. Nov. 1, 2011).  Because Plaintiffs' Complaint lacks any allegations regarding the Hospitals' performance of *any* obligations under the 2005 Project Order, even generally, their breach of contract claim must be dismissed.

For example, the 2005 Project Order requires that each Hospital "provide assistance at levels which will allow [SEN] to provide the Services to such [Hospital] in compliance with the Exhibits to this Order … by making available, on a timely basis, all Equipment, Software, *documentation, information* and access to personnel ..." 2005 Project Order ¶ 3.1 (emphasis added).  It further provides that SEN's "performance under this Order … is based upon the timely performance of each [Hospital] …" *Id.* at ¶ 3.3.  Plaintiffs have not alleged that they provided SEN with any information that was required for SEN to provide the bill review services, such as the relevant contractual terms for the overcharges at issue.

The reason Plaintiffs have not pled this essential element of their claim is obvious: they cannot.  Indeed, Plaintiffs have stated that they lacked the information they were obligated to provide to SEN.  *See* Verizon Compl. ¶¶ 29-30, 40-41.  If the Hospitals lacked the information necessary to discover the overcharges, then they were obviously unable to provide this information to SEN as was required under the 2005 Project Order.

The decision in *Comfort Inn* is instructive on this point.  There, the court dismissed the breach of contract claim, finding that "the amended complaint does not expressly allege, even in conclusory fashion, that Comfort Inn performed its contractual obligations" to recommend Hertz

- 12 -

to its guests and to not use other rental car providers. *Comfort Inn, Oceanside* at *4. More than just a technical defect, the court explained why pleading performance "should be required." *Id.* at *5. The defendant in the case argued that the plaintiff had failed to plead performance because it could not do so. *Id.* The court reasoned that if the defendant was correct, then the plaintiff would likely have no viable claim and it "should not be allowed to pursue th[e] case further if it does not allege that it performed its own obligations." *Id.* Similarly here, Plaintiffs' failure to plead their own performance, coupled with their admissions in the Verizon Complaint that they did not have the information necessary to discover many of the overcharges, demonstrates that they may not, in fact, be able to plead their own performance. Because of this failure, the breach of contract claim must be dismissed.

Even if the Hospitals' performance is deemed to be a condition precedent, Plaintiffs' breach of contract claim must nevertheless be dismissed. A condition precedent is "an act or event, other than a lapse of time, which, unless … excused, must occur before a duty to perform a promise in the agreement arises." *Patel v. Baluchi's Indian Rest.*, No. 08 Civ. 9985, 2009 WL 2358620, at *7 (S.D.N.Y. July 30, 2009) (quotation omitted). "Under the Federal Rules, a plaintiff is required to 'allege generally that all conditions precedent have occurred or been performed.'" *Baraliu v. Vinya Capital L.P.*, No. 07 Civ. 4626 (MHD), 2009 WL 959578, at *5 (S.D.N.Y. Mar. 31, 2009) (quoting Fed.R.Civ.P. 9(c)). The court in *Baraliu* applied Rule 9(c) to the New York contract claim, noting that "in federal diversity cases, federal courts apply state substantive law and federal procedural rules." *Id.* at *5 n. 4 (citations omitted).

Courts have properly dismissed breach of contract claims where even a general allegation of the satisfaction of a condition precedent was lacking. *See, e.g.*, *Patel*, 2009 WL 2358620, at *8 (dismissing a breach of contract claim where plaintiffs "failed to allege the satisfaction of the

- 13 -

stated condition precedent that must occur before defendant's duty to perform … arises")
(internal quotations omitted); *Udell v. Berkshire Life Ins. Co. of Am.*, No. 03 Civ. 2721(SJF),
2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005) (dismissing plaintiff's claim in finding that
"although a general averment of performance of a condition precedent is sufficient to withstand a
motion to dismiss, plaintiff does not even generally allege performance of his ... obligations
under the [contract]," (internal citation omitted)).  Despite the requirements of the Federal Rules,
Plaintiffs have failed to generally allege, or even mention, that any of their obligations had been
satisfied.  Plaintiffs' breach of contract claim must, therefore, be dismissed.

### B.      By its Clear Terms, The 2005 Project Order Does not Cover "Disconnects"

Even if Plaintiffs were to meet their pleading obligations, the claims for overcharges that
are based on alleged failure to "disconnect" service must be dismissed under the clear language
of the agreement.  "Where a contract's language is clear and unambiguous, a court may dismiss a
breach of contract claim on a Rule 12(b)(6) motion to dismiss."  *Maniolos v. U.S.*, 741 F. Supp.
2d 555, 567 (S.D.N.Y. 2010).  Further, where "the intent of the parties can be determined from
the face of the agreement, interpretation is a matter of law and a claim turning on that
interpretation may be resolved on a motion to dismiss."  *First Serv. Fin., Inc., v. City Lights At
Queens Landing, Inc.*, No. 08 Civ. 3312, 2009 WL 750190, at *2 (S.D.N.Y. Mar. 20, 2009)
(quotation omitted).  The 2005 Project Order makes clear that "[SEN] will not be liable for
disconnects, late fees, and liabilities associated with disconnects."  2005 Project Order Exhibit A
¶ 3.

A majority of the overcharges alleged by Plaintiffs do not involve merely reviewing,
verifying, and correcting Verizon invoices as the Complaint suggests.  *See* Compl. ¶ 17.  Rather,
many of the overpayments resulted from services that the Hospitals did not need, or never

- 14 -

ordered in the first place, and thus the service should have been disconnected.  *See* Compl. ¶¶ 25-41.   Disconnects, however, were outside the scope of the terms of the 2005 Project Order.  Looking at the contract as a whole, it is clear that SEN's responsibility was limited to receiving Verizon invoices, reviewing and correcting "any errors in the invoices," and preparing the invoices for payment. 2005 Project Order Exhibit A ¶ 3.  However, the overcharges in categories B, C, D and E (d) of Plaintiffs' Complaint were more than just "errors" in the invoices.   The overbilling with respect to the Transparent LAN (category B) occurred because "Verizon was supposed to terminate the Transparent LAN circuits when they were no longer needed." Compl. ¶ 27.   Indeed, the Plaintiffs allege that "Verizon had a duty to disclose to the Hospitals that Verizon required the Hospitals to *submit a disconnect request* before Verizon would stop billing for the Temporary LAN."   Verizon Compl. ¶ 31 (emphasis added).   Likewise with the IDSR Service (category C), the billing should have terminated when the service became redundant. Compl. ¶ 32.   The overcharge for the T-1 lines occurred because Verizon imposed a surcharge for services that the Hospitals did not request, want, or use.   Compl. at ¶ 37.   Lastly, the overbilling for category E (d) was the result of lines that were not working.  Compl. ¶ 41.  These overcharges were incurred because of a failure to disconnect the unwanted, unused, or malfunctioning services.  The 2005 Project Order is clear that SEN was not liable for disconnects or liabilities associated with disconnects.  2005 Project Order Exhibit A ¶ 3.  Therefore, SEN's supposed "failure" to identify the overcharges for the categories B, C, D, and E (d) cannot constitute a breach and Plaintiffs' claim as to those categories must be dismissed.  *See First Serv. Fin.*, 2009 WL 750190, at *3-4 (dismissing a breach of contract claim where the terms of the contract did not require payment for the particular actions taken by the plaintiff and therefore, the failure to pay plaintiff did not constitute a breach).

- 15 -

**IV.     THE HOSPITAL'S BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED**

Plaintiffs misquote the duties owed under the 2005 Project Order to assert their breach of fiduciary duty claims.  The Complaint is an attempt to transform what are deliberately limited fiduciary responsibilities into an overarching fiduciary relationship between the Parties.  Because the fiduciary duties owed do not apply to invoice processing, and because Plaintiffs have failed to allege a breach of the actual fiduciary duties owed under the 2005 Project Order, Plaintiffs' breach of fiduciary duty claim must be dismissed.  Moreover, to the extent that any fiduciary duties apply to invoice processing (which they do not), those duties were superseded by subsequent contract and are time-barred.

**A.     The Fiduciary Duties Do Not Apply to Invoice Management**

The law in New York is clear that an agreement which on its face is an arm's length contract between sophisticated parties "'will not be held to entail fiduciary duties absent some express agreement to that effect.'" *Teachers Ins. and Annuity Assoc. of Am. v. Cimi Mae Servs. Ltd. P'ship*, No. 06 Civ. 0392 (LAK), 2007 WL 7569162, at *1 (S.D.N.Y Sept. 7, 2007); (quoting *Calvin Klein Trademark Trust v. Wachner*, 129 F.Supp.2d 248, 250 (S.D.N.Y. 2001)). Accordingly, "courts look to the parties' agreements to discover, not generate, the nexus of the relationship and the particular contractual expression establishing the parties' interdependency." *Northeast Gen. Corp. v. Wellington Adver., Inc.*, 82 N.Y.2d 158, 160, 604 N.Y.S.2d 1, 2 (1993). Here, when looking at the plain language of the 2005 Project Order, it is clear that the fiduciary duties are narrowly tailored.

The duties quoted by Plaintiffs apply to "Vendor Coordination" and not invoice processing as the Complaint suggests. Exhibit A to the 2005 Project Order enumerates five different "services" provided to the Hospitals: Vendor Coordination, Switchboard Supervisor

- 16 -

Management, Invoice Processing, Mac and Service Fault Management, and other "Special Projects." 2005 Project Order Exhibit A ¶¶ 1-5. Each such section has its own "service levels" that apply. *See id*. The fiduciary duties quoted by Plaintiffs appear only in Section 1: Vendor Coordination and *not* in Section 3: Process Invoices. *See id.* at ¶¶ 1 and 3. "[W]hen parties set down their agreement in a clear, complete document, their writing should ... be enforced according to its terms." *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 767 (2004) (quoting *W.W.W. Assoc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990)). Here, the fiduciary duties owed do not apply to invoice processing; they apply to Vendor Coordination, which pertained to MAC, break/fix services and related services with the third-party vendors. *See* 2005 Project Order Exhibit A Preamble, ¶ 1. However, Plaintiffs employ a tortured reading of the 2005 Project Order and attempt to impose fiduciary duties where none exist. For this reason alone the breach of fiduciary duty claim must be dismissed.

### B.   Plaintiffs Have Failed to Allege A Breach of the Actual Duties Owed

Even if the fiduciary duties extended to invoice management, Plaintiffs have failed to allege a breach of the actual duties owed under the 2005 Project Order. In evaluating a breach of fiduciary duty claim, the "court must identify the particular obligations owed before determining whether there was a breach." *Soley v. Wasserman*, No. 08 Civ. 9262 (KMW)(FM), 2011 WL 4526145, at *9 (S.D.N.Y. Sept. 29, 2011). Of the various "service levels" associated with Vendor Coordination, only two limited fiduciary duties were created:

- [SEN] shall have a fiduciary duty to use its best efforts to reduce the [Hospitals'] financial responsibility with respect to the Vendor Agreements and to provide [the Hospitals] with timely notice of any renewal, termination, or cancellation dates, any upcoming changes in fees in respect of the Vendor Agreements, and any opportunities to reduce the [Hospitals'] costs with respect to the Vendor Agreements;

- 17 -

> *provided that, [SEN] can make no guarantee that it may actually reduce the [Hospitals'] financial responsibility with respect to the Vendor Agreements.*

- [SEN] shall also have a fiduciary duty to promptly inform [Continuum's CTO] of any breach of, or misuse or fraud in connection with, any Vendor Agreement *of which it becomes aware* and to cooperate with [the Hospitals] to prevent or mitigate the effects of any such breach, misuse, or fraud.

2005 Project Order at Exhibit A ¶ 1 (emphasis added).

The 2005 Project Order did not transform the arm's length relationship between the Parties into an overarching fiduciary relationship.  For example, the court in *Teachers Insurance and Annuity Assoc. of Am.* found that where the agreement between the parties expressly stated that the mortgage servicers acted "each as *independent contractor* servicer," the language precluded a finding of a fiduciary relationship.  2007 WL 7569162, at *1 (emphasis in original); *see also Calvin Klein Trademark Trust*, 129 F.Supp.2d at 250.  Similarly here, the IP-PBX Agreement states that "the [Hospitals] and [SEN] are independent contractors, with entirely separate businesses."  IP-PBX Agreement ¶ 11.16.  The agreement between the parties cannot, therefore, be read to create a fiduciary relationship.

Nor did the 2005 Project Order create "fiduciary duties to the Hospitals with respect to [SEN's] bill review function" as the Complaint suggests.  Compl. ¶ 16. While SEN had a duty to use best efforts to reduce financial responsibility with respect to Vendor Agreements, the contract *specifically disclaims* any guarantee that "it may actually reduce the [Hospitals'] financial responsibility."  2005 Project Order at Exhibit A ¶ 1.  The agreement is also clear that SEN was to inform the Plaintiffs of any breach or fraud "*of which it becomes aware.*"  *Id.* (emphasis added).  Plaintiffs make no allegation in the Complaint that SEN withheld any such information.  Plaintiffs' failure to actually allege a breach of the duties contracted for by the parties is fatal to the breach of fiduciary duty claim.  "A cause of action for breach of fiduciary

- 18 -

duty which is merely duplicative of a breach of contract claim cannot stand." *William Kaufman Org., Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 173, 703 N.Y.S.2d 439, 442 (1st Dep't 2000).  Here, Plaintiffs' breach of fiduciary duty claim has no merit and is merely a duplication of Plaintiffs' contractual claim based on a violation of the "Invoice Process" provisions of the 2005 Project Order.  This Second Cause of Action must therefore be dismissed in its entirety.

### C.   Any Fiduciary Duties Owed Were Superseded by the 2006 Project Order

Furthermore, any claim for breach of fiduciary duty arising out of the terms of the 2005 Project Order must also be dismissed because the 2005 Project Order was superseded by the 2006 Project Order, which eliminated all fiduciary duties.  Plaintiffs bring their claims pursuant to the terms of the Parties' IP-PBX Agreement and the 2005 Project Order, but ignore contract modifications that render their claims invalid as a matter of law.  Compl. ¶¶ 9-10.  Article IV of the IP-PBX Agreement provided the mechanism by which services under the IP-PBX Agreement were ordered and implemented.  *See* IP-PBX Agreement  ¶ 4.1(b).  These additional services were deemed "Orders" and Section 11.20 of the IP-PBX Agreement stated that "The parties incorporate by reference into this Agreement each Order that is executed by [SEN] and one or more of the [Hospitals], which shall be made on the specific terms and conditions of this Agreement to the extent applicable."  *Id.* at ¶ 11.20.  The 2006 Project Order specifically states it is "incorporated *as part* of the IP-PBX Agreement."  2006 Project Order Cover Page (emphasis added).  Thus, the 2006 Project Order is part of the IP-PBX Agreement, and no less integral to the Complaint than the IP-PBX Agreement itself.  These documents, together with the 2005 Project Order, form the relevant contract between the parties concerning telecommunication management services and must be considered on a motion to dismiss.  Plaintiffs cannot escape the consequences of the 2006 Project Order by "carefully avoiding all mention" of its terms

- 19 -

when it is an indivisible part of the agreement among the Parties, and where Plaintiffs

undoubtedly had notice of the document.  *See* Yak, 252 F.3d at 130-31.

Under New York law "a subsequent contract regarding the same matter will supersede

the prior contract." *Barnum v. Millbrook Care Ltd. P'ship.*, 850 F.Supp. 1227, 1236 (S.D.N.Y.

1994), *aff'd*, -- F.  App'x --, 43 F.3d 1458 (2d Cir. 1994).  The 2006 Project Order contains a

merger clause stating that "This Order, together with the IP-PBX Agreement, sets forth the entire

understanding between the Parties as to the subject matter hereof ..." and that "None of the

Parties will be bound by any conditions, definitions, warranties, understandings or

representations with respect to such subject matter other than as expressly provided herein."

2006 Project Order ¶ 9.2.  The 2006 Project Order imposes no fiduciary duties on SEN with

respect to any services performed.  Without such duties, there can be no claim for breach.

Even if the entire agreement is not superseded, where a subsequent contract contains

provisions which are of the same subject matter, a subsequent agreement supersedes "those terms

of the earlier agreement that are of the same subject matter." *Creditsights, Inc. v. Ciasullo*, No.

05 cv 9345 (DAB), 2007 WL 943352, at * 6 (S.D.N.Y. Mar. 29, 2007).  Here, the Parties agreed

to a subsequent order covering invoice management and investigation.  *See* 2006 Project Order

Statement of Work.  The 2006 Project Order emphasizes that its terms supersede the prior

agreements with respect to those services (2006 Project Order ¶ 9.2) and that in the event of a

conflict, the 2006 Project Order has precedence.  *See* 2006 Project Order Preamble.  Because the

fiduciary duties were eliminated by the 2006 Project Order, the Plaintiffs' breach of fiduciary

duty claim cannot stand.

**D.      The Breach of Fiduciary Duty Claim is Time-Barred**

Lastly, the Plaintiffs' claims are barred by a three-year statute of limitations.  New York law does not provide for a single statute of limitations for breach of fiduciary duty claims. "Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks."  *IDT Corp. v. Morgan Stanley Dean Witter & Co. et al.,* 12 N.Y.3d 132, 139, 879 N.Y.S.2d 355, 359 (2009).  The New York Court of Appeals has held that where the equitable relief sought, including disgorgement, is incidental to the monetary relief sought, the statute of limitations is 3 years.  *Id.*   Plaintiffs seek equitable relief in the form of disgorgement. Compl. ¶ 50.  However, this relief is clearly incidental to the monetary damages sought by Plaintiffs and described in detail throughout the Complaint.  Where relief is sought for both a breach of contract and breach of fiduciary duty, the court may apply a three year statute of limitations to the latter while preserving the six year statute of limitations for the former.  *See Drain v. Paragon Capital Mgmt. Corp.*, 16 Misc.3d 1115(A), 2007 WL 2161904, at *5, *7 (Sup. Ct. Suffolk Cnty. July 3, 2007) (finding that defendants had a fiduciary duty, as brokers, arising out of "the broad discretion given to them to purchase and sell investments *as set forth the Agreement*" and applying a 3 year statute of limitations to the breach of fiduciary duty claim and a six year statute of limitations for the breach of contract claim) (emphasis added).

The statute of limitations begins to accrue when damages are sustained such that the claim becomes enforceable (*IDT Corp.* 12 N.Y.3d at 140) and not upon plaintiff's discovery of the alleged breach.  *See Dignelli v. Berman et al.*, 293 A.D.2d 565, 565, 741 N.Y.S.2d 66, 68 (3d Dep't 2002); *Transp. Workers Union of Am. Local 100 AFL-CIO et al. v. Schwartz*, 32 A.D.3d 710, 713, 821 N.Y.S.2d 53, 57-8 (1st Dep't 2006).  Many of the alleged overcharges began as early as 2005, Compl. ¶¶ 20-39, triggering the statute of limitations.  Even looking at the claim

- 21 -

as accruing when the relationship was repudiated or otherwise terminated, *see Marchig v. Christie's, Inc.*, 430 F.App'x. 22, 2011 WL 2685608, at *24 (2d Cir. July 12, 2011), the fiduciary duties were terminated by the signing of the 2006 Project Order.  Therefore, Plaintiffs' fiduciary duty claim is also time-barred and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, SEN respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and grant such other and further relief, together with costs, as this Court deems appropriate.

Respectfully Submitted,

By: /s/ Dennis H. Tracey, III
Dennis H. Tracey, III
Anna Kadyshevich
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com

*Attorneys for Defendant*

- 23 -